FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA  01 JAN 12 PM 5: 47
TAMPA DIVISION

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

JOHN BAILEY and FRANK DUNN
On behalf of themselves and all
Others similarly situated;

    Plaintiffs,

vs.                                                    No. 8:01-CV-53-T-23EAJ

GULFCOAST TRANSPORTATION, INC          COLLECTIVE ACTION
and  NANCY CASTELLANO;

    Defendants.
_____/

### PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER ("TRO")

Plaintiffs move this Court for an order temporarily restraining defendants Gulf

Coast Transportation, Inc. ("Gulf Coast") and Nancy Castellano ("Castellano"), their

officers, agents, or employees, from discharging, threatening, harassing, intimidating,

altering the contractual working relationship or otherwise discriminating against taxicab

drivers who participate, or are contemplating participation, in this action.  Plaintiffs also

move this Court to restrain John M. Camillo, Esquire, from continuing to violate Florida

Bar Rule 4-4.2.

### MEMORANDUM IN SUPPORT OF MOTION FOR TRO

#### I. INTRODUCTION

On the morning of January 10, 2001, plaintiffs John Bailey and Frank Dunn

("Plaintiffs") filed this proposed collective action lawsuit alleging violations of the Fair

Labor Standards Act (FLSA), 29 U.S.C. § 216(b) against defendants Gulf Coast and

3

Castellano, seeking to recover unpaid minimum wage compensation. Plaintiffs allege that defendants engaged in a leasing scheme designed to bypass the FLSA's minimum wage requirements by improperly designating plaintiff taxicab drivers as "independent contractors" rather than employees. At the time of filing, plaintiffs also filed opt-in forms for twenty-five (25) current or former Gulf Coast taxicab drivers seeking to participate in the suit.

Beginning minutes after she was served a summons in this case on January 10, 2001, defendant Castellano, Gulf Coast's General Manager, and Gulf Coast President John Camillo, Esquire, began a course of intimidation, threats, and retaliatory conduct against the plaintiff taxicab drivers still employed by Gulf Coast. On January 11, 2001, defendant Castellano and Gulf Coast President and licensed member of the Florida Bar, John Camillo, called at least six plaintiffs, all of whom are current Gulf Coast taxicab drivers, into defendant Castellano's office to interrogate them about this lawsuit and to threaten and intimidate them. These retaliatory actions have had and are creating a chilling effect on both the plaintiff taxicab drivers and putative plaintiffs in this action.

II.     STATEMENT OF FACTS

A summons, which included a copy of the complaint and opt-in forms, was served on defendant Castellano, at approximately 4:50 p.m. on January 10, 2001. See Summons and Return of Service attached as Exhibit A. Within minutes, defendant Castellano telephoned plaintiff John Bailey and at least five opt-in plaintiffs, all of whom are still employed by Gulf Coast, informing them that because of their participation in this lawsuit Gulf Coast has decided not to renew their contracts and instructing them to turn in their taxicabs the next morning -- effectively terminating their employment with Gulf

Coast. <u>See</u> Declarations of John Bailey, **Mark** Gutkin, Thomas Kirkpatrick, William Mort, Emmanouil Tountas, Joseph Vaccaro, and Srdjan Vasiljevic, attached as Composite Exhibit B.

Beginning at approximately 5:30 p.m. on January 10, 2001, Castellano began calling back the drivers whom she had just terminated and telling them that she had decided not to terminate their contracts as previously stated, but instead saying she wanted to meet with them the next day to "review their contracts." <u>See</u> Exh. B and C.

When the plaintiffs met with Castellano on Thursday, January 11, 2001 as instructed, Castellano immediately set up a conference call with Gulf Coast President and member of the Florida Bar, John Camillo. <u>See</u> Composite Exh. B.  Camillo conducted the entire interview, asking drivers why Ms. Castellano was named individually, whether and why they believed Gulf Coast taxicab drivers are employees rather than independent contractors, and threatening and attempting to intimidate drivers into stating that they are independent contractors and not employees. <u>See</u> Composite Exh. B.  For example, when interrogating plaintiff William Mort, Camillo told Mort that if he wanted to continue working for Gulf Coast, he must state that he was an independent contractor. <u>See</u> Exh. B., Declaration of William Mort, para. 7.  At the end of each interview, Camillo informed the plaintiffs that they could continue driving for now, but he would be reviewing their contracts to determine whether or not he would permit them to continue driving for Gulf Coast. <u>See</u> Composite Exh. B.  Camillo informed plaintiff Mort that if he [Camillo] changed his mind, Mort might be terminated as early as Friday, January 12, 2001.  <u>See</u> Exh. B., Declaration of William Mort, para. 7.

Camillo's improper interrogation of the plaintiff taxicab drivers took place despite having been served a copy of the complaint in this action in which it was clear that the plaintiff taxicab drivers were represented by counsel. This interrogation continued even after several drivers stated that they had been instructed by their attorneys not to speak to Gulf Coast about the subject matter of this lawsuit and that Mr. Camillo should contact plaintiffs' attorneys with any questions related to the lawsuit. See Exh. A; Declarations of Mark Gutkin, para. 6 and John Bailey, para. 7-8.

On January 11, 2001, plaintiffs' counsel sent a letter to attorney John Camillo via facsimile and U.S. Mail, reminding him of the ethical prohibition against speaking to a party about the subject matter of litigation when the attorney knows that party to be represented by counsel. See letter to John Camillo attached as Exh. C. Mr. Camillo has not responded to plaintiffs' counsel's January 11, 2001 letter. However, on January 12, 2001, Castellano and Camillo called another opt-in plaintiff into the company's office and interrogated him about this lawsuit. See Declaration of Joseph Vacarro.

On Friday afternoon, January 12, 2001, Mr. Camillo sent a letter to plaintiffs' counsel stating, "So long as your clients want to operate in our system, they must do so as independent contractors. In addition, I will continue to discuss their relationship with the company as it pertains to both the past, and the future." See letter from John Camillo, Esq. attached as Exh. D.

III.    ARGUMENT

The retaliatory actions of Castellano and Camillo described above were designed to intimidate plaintiff taxicab drivers into dropping this lawsuit and designed to, and are having the effect of, discouraging other similarly situated drivers from participating in

this lawsuit.  See Exh. C.  In addition, the threat to plaintiff taxicab drivers of imminent

termination for their participation in this suit has been explicitly stated by defendants.

See composite Exh. B.  If defendants are not immediately enjoined from discharging,

threatening, harassing and intimidating plaintiffs in retaliation for their participation in

this action, the entire putative plaintiff class will suffer irreparable harm.[1]

> A.    A Temporary Restraining Order is Necessary to Avoid Immediate and
>        Irreparable Harm

To obtain a temporary restraining order, plaintiffs must show that they will

suffer immediate and irreparable harm without injunctive relief.  Fed. R. Civ. P.

65(b).  Irreparable injury does not necessarily have to be monetary to justify

reinstatement or an injunction against retaliatory termination.  See Lafferty v.

Carter, 310 F.Supp 465, 468 (W.D. Wisc. 1970)(finding that suspending

professors with pay and prohibiting them from using the school's facilities

constituted irreparable harm).

In OTR Drivers at Topeka Frito-Lay, Inc.'s Distribution Ctr. v. Frito-Lay,

Inc., 1991 WL 49758 (D.Kan. 1991), the employees filed a lawsuit against Frito-

Lay for violating the wage and hour provisions of the FLSA.  Frito-Lay 1991 WL

49758 at *1.  The court found that employees who had opted into the lawsuit had

been subjected to "unlawful discipline, which could result in their termination."

Id.  The court further held that as a result of the defendant's conduct, the plaintiffs

suffered irreparable harm and were entitled to a temporary restraining order

---

[1] Following the 1977 amendments to the FLSA, private plaintiffs in FLSA actions may seek any
appropriate "legal and equitable relief [for retaliation]"...including without limitation employment,
reinstatement or promotion.   29 U.S.C. § 216(b).   See OTR Drivers at Topeka Frito-Lay, Inc.'s
Distribution Ctr. v. Frito-Lay, Inc., 1991 WL 49758 (D.Kan. 1991)(issuing TRO in FLSA wage and hour
action to enjoin employer from engaging in threatening, harassing or intimidating conduct).

prohibiting the defendant from threatening, harassing, or intimidating the plaintiffs. Id.

To date, at least six of the nineteen opt-in plaintiffs who are still employed by Gulf Coast have been told they were fired, them called into defendants' offices for an interrogation by a licensed attorney regarding the subject matter of this lawsuit, and told their contracts were being reviewed, after which they might be fired for participating in this suit.[2] See Composite Exh. B. The plaintiffs were eventually permitted to continue working, but with the explicit threat that defendants were "reviewing their contracts" to determine whether or not their employment with Gulf Coast would continue. Id. Therefore, the plaintiffs' need for injunctive relief is immediate, as defendants' have indicated that they may terminate plaintiffs as early as Friday, January 12, 2001. See Composite Exh. C., especially Declaration of William T. Mort, para. 7.

In addition, Mr. Camillo's interrogation of plaintiffs, who he knows to be represented by counsel, not only violates Florida Bar Rule 4-4.2, but is causing immediate and irreparable harm to plaintiffs' case. Mr. Camillo is interrogating plaintiffs about issues that are at the very core of this case -- why the drivers believe they are employees rather than independent contractors. See Composite Exh. B. This improper interrogation of plaintiffs, without permission of plaintiffs counsel, is causing immediate and irreparable harm to plaintiffs' case, as Mr. Camillo is sharing the information obtained from these improper interviews with

---

[2] Most of the other opt-in plaintiffs who still work for Gulf Coast have been contacted by defendants and appointments scheduled for Monday, January 15, 2001.

the attorneys who will be defending this case. See Exh. C, Declaration of

William Mort, para. 8.

The defendants' retaliatory conduct has had and will continue to have a

"chilling effect" on potential opt-in class members. See Exh. C, Declaration of

John Bailey, para. 9; Declaration of John Doe, para. 3 and 6.

> A retaliatory discharge carries with it the distinct risk that other employees
> may be deterred from protecting their rights under the Act....These risks
> may be found to constitute irreparable injury.

Holt v. The Continental Group, Inc., 708 F.2d 87, 90 (2nd Cir. 1994). See also, Garcia v.

Lawn, 805 F.2d 1400, 1405 (9th Cir. 1986)(chilling effect of retaliation may constitute

irreparable harm). In the instant case, the defendants' retaliatory and intimidating

conduct is having a chilling effect on potential class members. See Exh. C, Declaration

of John Bailey, para. 9; Declaration of John Doe, para. 3 and 6.

Upon being served with the complaint in this action, defendants immediately

began calling plaintiff taxicab drivers and informing them that they were being

terminated. See Composite Exh. B. In addition, defendants' employee dispatcher

announced over Gulf Coast's dispatch radio that anyone who participated in this lawsuit

would soon be gone. Exh. C, Declaration of William T. Mort, para. 4. Although the

defendants have temporarily retracted the plaintiffs' terminations pending defendants'

"review" of the drivers' contracts, these actions are having an immediate and irreparable

chilling effect on other potential class members. See Exh. C.

To the extent the plaintiffs and other potential plaintiffs are given a realistic fear

that they will be terminated, harassed, intimidated, or even deported if the elect to defend

their rights under the FLSA, they are likely to be deterred from participating further.

This case presents the quintessential example of retaliation designed to have an immediate and irreparable chilling effect, not only on those against whom the retaliation is directed, but other potential class members as well. Id.

      B.      <u>An Award of Damages Will Not Adequately Compensate Plaintiffs</u>

Plaintiffs must also show that an award of damages would not adequately compensate them. <u>OTR Drivers at Topeka Frito-Lay, Inc.'s Distribution Ctr. v. Frito-Lay, Inc.</u>, 1991 WL 49758 (D.Kan. 1991). Although an award of compensation may partially compensate those plaintiffs who are terminated and continue participating in this action, it will not compensate those plaintiffs who are threatened, harassed and intimidated into dropping their claim. Nor will it adequately compensate those who are so afraid they elect not to defend their rights. In effect, if the defendants are not immediately enjoined, they will have "gained the advantage of the fearful silence of the remaining employees." <u>Brock v. Casey Truck Sales, Inc.</u>, 839 F.2d 872 (2nd Cir. 1988).

> This silence, until broken by a judgment against the employer, provides the employer an opportunity for continued wrongdoing and strikes at the core of the complaint-based enforcement mechanism contemplated by the FLSA.

<u>Id.</u> at 880. If the defendants are permitted to continue their inappropriate conduct towards the plaintiffs, they will succeed in gaining the fearful silence of their employee drivers.

IV.     CONCLUSION

For all of the reasons stated herein, defendants Gulf Coast and Castellano must be immediately enjoined from discharging, harassing, threatening, intimidating or otherwise discriminating against plaintiffs, or putative plaintiffs,

with regard to their participation in this lawsuit and John Camillo, Esq. Should be

enjoined from further communicating with plaintiffs in violation of Fla. Bar Rule

4-4.2.

Dated: January /2, 2001

SAM J. SMITH, FL Bar No. 0818593
(Trial Counsel)
KAREN M. DOERING, FL Bar No. 0060879
STACEY KLEIN VERDE, FL Bar No.
153397

BURR & SMITH, LLP
442 West Kennedy Blvd., Suite 300
Tampa, FL 33606
813/253-2010
813/254-8391 (facsimile)

DAVID SOCKOL, FL Bar No. 0818607
(Trial Counsel)
R. MARK BORTNER, FL Bar No. 0087180
SOCKOL & ASSOCIATES, P.A.
111 Second Ave. N.E., Suite 1406
St. Petersburg, FL 33701
727/822-5200
727/821-5319 (facsimile)

ATTORNEYS FOR PLAINTIFFS

# Exhibit
# A

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

MIDDLE ———— **DISTRICT OF** ———— FLORIDA

JOHN BAILEY and FRANK DUNN
on behalf of themselves and
all others similarly situated,
          Plaintiffs

**SUMMONS IN A CIVIL CASE**

V.

GULF COAST TRANSPORTATION, INC.
and NANCY CASTELLANO,
          Defendants.

CASE NUMBER: *8:01-CV-53-T-23EAJ*

**ORIGINAL PROCESS**

TO: (Name and address of defendant)

Ms. Nancy Castellano
Gulf Coast Transportation, Inc.
1701 W. Cass Street
Tampa, Florida  33606

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Sam J. Smith
Burr & Smith, LLP
442 W. Kennedy Blvd., Suite 300
Tampa, Florida  33606
813/253-2010

Date *1/10/01*  Time *1:50 PM*
Name *Nancy Castellano*
Relationship *Individual*
Donald W. Seward
CPS48-0900114

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

SHERYL L. LOESCH

JAN 1 0 2001

CLERK

*Shirley A. Hollon*

DATE

(BY) DEPUTY CLERK

8. Mr. Camillo conducted the entire interview that followed. Mr. Camillo then asked me if, at the time I signed the contract with the company, whether it was my understanding that I was signing as an employee or an independent contractor. Mr. Camillo next asked in what ways I felt like an employee and not an independent contractor. Mr. Camillo then asked whether I knew that Ms. Castellano's name was listed on the lawsuit and if I was willing to participate in such a lawsuit. Next, Mr. Camillo told me that I could continue driving as an independent contractor while they review the contract I have with them. I told him that I needed to discuss this with my attorney and my wife and would provide them with an answer later. Mr. Camillo then terminated the interview.

I declare under penalty of perjury under the laws of the United States that the foregoing two-page declaration is true and correct.


Executed this _11_ day of January 2001 in Tampa, Florida.


SRDJAN VASILJEVIC

2

5. Mr. Camillo conducted the entire interview that followed. Mr. Camillo first asked whether I was aware about the lawsuit filed by cab drivers against Gulf Coast Transportation. I responded that I was. Mr. Camillo then asked me if I was aware that Ms. Castellano was named in the lawsuit, and I responded that I was. Mr. Camillo next asked me why I, and the other cab drivers, filed this lawsuit. I informed Mr. Camillo that it was nothing personal against Ms. Castellano, but that the suit relates to the practices of Gulf Coast Transportation.

6. Next, Mr. Camillo informed me that he was going to review my contract but that I could continue to drive for Gulf Coast Transportation as an independent contractor. Mr. Camillo then terminated the interview.

I declare under penalty of perjury under the laws of the United States that the foregoing two page declaration is true and correct.

Executed this _12_ day of January 2001 in Tampa, Florida.

Joseph Vaccaro

# Exhibit

# B

## DECLARATION OF JOHN BAILEY

I, John Bailey, declare:

1.         My name is John Bailey and I reside in Hillsborough County, Florida.  I make this declaration based upon personal knowledge and if sworn as a witness, could testify competently to the facts contained herein.

2.         I have been employed on a continuous basis by Gulf Coast Transportation, Inc. ("Gulf Coast") a/k/a Cooperative Leasing, Inc. to drive a taxicab for United Cab in Hillsborough County, Florida since approximately April 1994.  I have a twelve-month lease that allows me to pay for the cab on a weekly basis.  My lease is normally reviewed in approximately April of each year.

3.         On January 10, 2001, I filed a lawsuit against Gulf Coast for failure to pay minimum wage.

4.         At approximately 5:12 p.m. on January 10, 2001, Nancy Castellano, who is the General Manager for Gulf Coast, called me on my cell phone.  She informed me that Gulf Coast decided not to renew my contract, and that I must turn my cab in tomorrow.

5.         At approximately 5:30 p.m. on January 10, 2001, Ms. Castellano called me again on my cell phone and told me that there had been a misunderstanding, and that they wanted to review my contract.  She then asked what time would be convenient for me to meet with her tomorrow and I told her 12:00 noon.

6.         When I arrived at Ms. Castellano's office at approximately 12:00 p.m., as instructed, Ms. Castellano asked me to sit close to the desk so that I would be closer to the speaker phone for a conference call with Gulf Coast President John Camillo.  It is my understanding that Mr. Camillo is an attorney.

7.      Mr. Camillo started off by stating that he wanted me to understand that they consider the taxicab drivers to be independent contractors.  He told me that he was surprised and disappointed that we included Ms. Castellano in the lawsuit along with the company.  I informed Mr. Camillo that I was advised by my attorneys not to speak to him about the lawsuit and that he should contact the attorneys if he wanted to know about the lawsuit.  Mr. Camillo said he understood that, and if they are good attorneys, that is what they would do.

8.      Mr. Camillo then began talking about the costs of running a taxicab company and explaining why the lease rates were so high.  Mr. Camillo then asked me why the drivers feel that we are treated as employees.  I again reminded Mr. Camillo that I should not talk to him about the lawsuit, but gave him several examples of why I thought the airport drivers were employees and not independent contractors.

9.      At two different points in the conversation, Mr. Camillo stated that he did not think that we had the support of the drivers in this lawsuit, because as far as the company could tell, there were only five active Gulf Coast drivers who are participating in the lawsuit so far.  I informed Mr. Camillo that there were many additional drivers who were interested in participating, but were afraid to come forward.

9.      Mr. Camillo told me that they had not yet come to a decision regarding whether to allow me to continue driving for Gulf Coast.  Since I make my lease payments in advance, I asked whether I would be permitted to continue driving until next Thursday if I made my weekly lease payment tonight.  Mr. Camillo said yes, but he could not guarantee anything after that.

10.     Mr. Camillo then repeated his comments about how expensive it was to run a cab company and then terminated the call.

11.     Following the conversation with Mr. Camillo, I began talking to Ms. Castellano about the future relationship between Gulf Coast and its drivers.  Ms. Castellano told me that she felt hurt that we named her personally in the lawsuit.  She then explained that it was necessary to have control over the business to prevent chaos.

I declare under penalty of perjury under the laws of the United States that the foregoing three page declaration is true and correct.

Executed this _11_ day of January, 2001 in Tampa, Florida.

_____
John Bailey

# DECLARATION OF MARK GUTKIN

I, Mark Gutkin, declare:

1. My name is Mark Gutkin and I reside in Largo, Florida. I make this declaration based upon personal knowledge and if sworn as a witness, could testify competently to the facts contained herein.

2. I was employed on a continuous basis by Gulf Coast Transportation, Inc. ("Gulf Coast") a/k/a Cooperative Leasing, Inc. to drive a taxicab for United Cab in Hillsborough County, Florida from approximately February 1994 through the present.

3. Shortly after 5:20 p.m. on **Wednesday, January 10, 2001**, I received a call from Gulf Coast General Manager Nancy Castellano. Ms. Castellano told me that I must return my taxciab to Gulf Coast tomorrow morning and that my contract with Gulf Coast was terminated.

4. Approximately fifteen minutes later on Wednesday, January 10, 2001, Ms. Castellano called me back and asked me to come in to her office tomorrow morning to review my contract. I told her that I was confused because I thought she had just fired me and there was nothing to review. At that point, I was driving in heavy traffic and told Ms. Castellano that I would come to her office tomorrow morning.

5. When I reported to Ms. Castellano's office as directed at 11:30 a.m. on Thursday, January 11, 2001, Ms. Castellano asked me if I minded if she set up a conference call with Gulf Coast President John Camillo in Ft. Lauderdale. I told her that would be okay. It is my understanding that Mr. Camillo is an attorney.

6. Mr. Camillo conducted the entire interview that followed. Mr. Camillo first stated that I joined a lawsuit with John Bailey and Frank Dunn and asked me whether I

thought it was fair that we review my contract. I agreed that we could review the contract

and Mr. Camillo then asked me if, at the time I signed the contract with the company,

whether it was my understanding that I was signing as an employee or an independent

contractor. Mr. Camillo next asked in what ways I felt like an employee and not an

independent contractor. I repeatedly informed Mr. Camillo and Ms. Castellano that I

could not answer any questions about the lawsuit and that they should contact my

attorneys. Mr. Camillo told me that we were not talking about the lawsuit.

7.      Next, Mr. Camillo asked me whether I would like to continue driving as an

independent contractor while they review the contract I have with them. I told him that I

would drive. Mr. Camillo kept pushing me to say that I was an independent contractor,

but I would not. I told him that I would drive, and that I would not discuss my status with

him at this time. Mr. Camillo then thanked me for speaking to him. He then informed

me that he would let me know after they had reviewed my contract whether I can

continue driving for Gulf Coast. Mr. Camillo then terminated the interview.

I declare under penalty of perjury under the laws of the United States that the

foregoing two page declaration is true and correct.


Executed this _11_ day of January 2001 in Tampa, Florida.

_____

Mark Gutkin

## DECLARATION OF THOMAS W. KIRKPATRICK

I, Thomas W. Kirkpatrick, declare:

1. My name is Thomas Kirkpatrick and I reside in Hillsborough County, Florida. I make this declaration based upon personal knowledge and if sworn as a witness, could testify competently to the facts contained herein.

2. I was employed on a continuous basis by Gulf Coast Transportation, Inc. ("Gulf Coast") a/k/a Cooperative Leasing, Inc., to drive a taxicab for United Cab in Hillsborough County, Florida from approximately June 1991 through the present.

3. Shortly after 5:00 p.m. on Wednesday, January 10, 2001, I received a call from Gulf Coast General Manager Nancy Castellano. Ms. Castellano told me that Gulf Coast can no longer lease a car to me. When I asked why, Ms. Castellano responded, "Come on Tom, you know why." I interpreted this to mean because I had participated in this lawsuit, which was filed that morning. Ms. Castellano went on to say that I should bring my car in to the office in the morning, and that if I had any charge tickets that needed to be processed, I should turn them in at that time as well.

4. Approximately 15-20 minutes later, Ms. Castellano called me back and said that she wanted to make sure there was no misunderstanding; she wanted me to come in tomorrow so that they could review my contract. I told her that I understood perfectly well what she meant from the first conversation. Ms. Castellano, then said, "No, no, no, we need you to come in tomorrow to review your contract." Ms. Castellano told me to report to her office at 1:00 p.m. tomorrow.

5. I reported to Ms. Castellano's office as directed at 1:00 p.m. on Thursday, January 11, 2001. At approximately 1:45 p.m., Ms. Castellano invited me into her office.

Ms. Castellano informed me that she had John Camillo from Ft. Lauderdale on the speaker phone. During my phone conversation with Mr. Camillo, he informed me that he is an attorney by trade, although not currently practicing. He said that he is an officer of Gulf Coast.

6. Mr. Camillo conducted the entire interview. Mr. Camillo informed me that they were having these conversations with the drivers listed in the suit against Gulf Coast and Ms. Costellano. He then asked me whether I was aware of that. I told him that I was aware that we were filing suit against Gulf Coast.

7. Mr. Camillo asked me a series of questions in which he appeared to be trying to get me to say that I considered myself an independent contractor. He then asked me whether I thought he or Ms. Castellano ever treated him unfairly.

8. Mr. Camillo then asked me whether I was a daily or weekly driver. I told him that I was a weekly driver. He then asked me when I usually pay my lease. I told him that I usually pay it Thursday night or Friday morning. He then told me that I could go ahead and pay my lease tonight and I was good for another week, which should give his attorneys time to figure out what they are going to do. Finally, Mr. Camillo told me that he was really disappointed in us and that he did not know what we thought we were going to get out of this. He then terminated the interview.

I declare under penalty of perjury under the laws of the United States that the foregoing two page declaration is true and correct.

Executed this 11th day of January 2001 in Tampa, Florida.

_Thomas W. Kirkpatrick_
Thomas Kirkpatrick

## DECLARATION OF WILLIAM T. MORT, II

I, William T. Mort, II, declare:

1. My name is William Mort and I reside in Pinellas County, Florida.  I make this declaration based upon personal knowledge and if sworn as a witness, could testify competently to the facts contained herein.

2. I was employed by Gulf Coast Transportation, Inc. ("Gulf Coast") a/k/a Cooperative Leasing, Inc., to drive a taxicab for United Cab in Hillsborough County, Florida off and on from approximately October 1996 through the present.

3. At approximately 2:30 p.m. on Thursday, January 11, 2001, Gulf Coast General Manager Nancy Castellano approached me while I was at the Gulf Coast garage having my car serviced.  Ms. Castellano asked me if I had a minute to come into her office to talk.

4. Before being called into Ms. Castellano's office, I heard George [LNU], a dispatcher who works very closely with Ms. Castellano, broadcast over the Gulf Coast radio that all of the drivers who are participating in this lawsuit will be out of here soon. I interpreted this to mean that we would all be fired. He also made comments about lead plaintiff John Bailey over the radio and said that if he sees John Bailey in person, he will tell him exactly what he thinks of him.

5. As I went into Ms. Castellano's office, she asked me if I minded if she set up a conference call with John Camillo from Ft. Lauderdale.  Mr. Camillo conducted the entire interview.

6. Mr. Camillo started the conversation by saying, "Mr. Mort, you're suing us." He then asked me if I knew that I was suing Ms. Castellano also.  He asked me how I

could I face her and look her in the eye. He then asked me how I thought she must feel. During our conversation, Mr. Camillo asked me why we were filing suit. I told him it was to make change. He then said that this is not the way to get things done. I felt like throughout the entire conversation, Mr. Camillo was trying to antagonize and intimidate me.

7. Next, Mr. Camillo asked me if I wanted to drive off the lot with a vehicle. I told him that I did. Mr. Camillo told me that if I wanted to leave there with a cab, I would have to agree that I am an independent contractor. Because I did not want to lose my job, I finally agreed to say that I was an independent contractor. He then told me that I could leave with the car, but that might be subject to change. He said that he could call me back tomorrow and change his mind, depending on what his lawyers decided. He told me that he was very disappointed that we would go about it this way and said something to the affect that this was cowardly or not very manly. Because I did not want to lose my job, I basically just agreed with whatever he said.

I declare under penalty of perjury under the laws of the United States that the foregoing two page declaration is true and correct.

Executed this _11_ day of January 2001 in Tampa, Florida.

_____
William T. Mort

## DECLARATION OF EMMANOUIL TOUNTAS

I, Emmanouil Tountas, declare:

1. My name is Emmanouil Tountas and I reside in Hillsborough County, Florida. I make this declaration based upon personal knowledge and if sworn as a witness, could testify competently to the facts contained herein.

2. I was employed on a continuous basis by Gulf Coast Transportation, Inc. ("Gulf Coast") a/k/a Cooperative Leasing, Inc. to drive a taxicab for United Cab in Hillsborough County, Florida from approximately October 1994 through the present.

3. At approximately 4:00 p.m. on Wednesday, January 10, 2001, I received a call from Gulf Coast General Manager Nancy Castellano. Ms. Castellano told me that I must return my taxciab to Gulf Coast tomorrow morning and that my contract with Gulf Coast was terminated.

4. Approximately two weeks earlier, Ms. Castellano had asked me whether I was involved in a lawsuit that was rumored to be filed against Gulf Coast in the near future. I told her that I was. Therefore, when Ms. Castellano heard that a lawsuit had been filed, she knew that I was involved.

5. At approximately 4:25 p.m. on Wednesday, January 10, 2001, Ms. Castellano called me back and said that she had made a mistake; my contract was not terminated, but instead had to be reviewed. She told me that I did not have to turn my car in tomorrow morning, but had to report to her office at 11:30 a.m. tomorrow morning.

6. When I reported to Ms. Castellano's office as directed at 11:30 a.m. on Thursday, January 11, 2001, Ms. Castellano asked me if I minded if she set up a conference call with Gulf Coast President John Camillo in Ft. Lauderdale. It is my

understanding that Mr. Camillo is an attorney. I told her I did not have a problem with that.

7. Mr. Camillo conducted the entire interview that followed. Mr. Camillo first asked me if it would be okay for the company's lawyers to talk to me about the case later. Mr. Camillo then asked me if, at the time I signed the contract with the company, whether it was my understanding that I was signing as an employee or an independent contractor. Mr. Camillo next asked in what ways I felt like an employee and not an independent contractor. Mr. Camillo then asked whether I knew that Ms. Castellano's name was listed on the lawsuit. His next question was what I had against Ms. Castellano personally. Next, Mr. Camillo asked me whether I would like to continue driving as an independent contractor while they review the contract I have with them. I told him that I would and Mr. Camillo then thanked me for speaking to him. He then informed me that he would let me know tomorrow after they had reviewed my contract whether I can continue driving for Gulf Coast. Mr. Camillo then terminated the interview.

I declare under penalty of perjury under the laws of the United States that the foregoing two page declaration is true and correct.

Executed this _11_ day of January 2001 in Tampa, Florida.

Emmanouil Tountas

Exhibit

# DECLARATION OF JOSEPH VACCARO

I, Joseph Vaccaro, declare:

1. My name is Joseph Vaccaro and I reside in Tampa, Florida. I make this declaration based upon personal knowledge and if sworn as a witness, could testify competently to the facts contained herein.

2. I was employed on a continuous basis by Gulf Coast Transportation, Inc. ("Gulf Coast") a/k/a Cooperative Leasing, Inc. to drive a taxicab for United Cab in Hillsborough County, Florida from approximately July 1998 through the present.

3. On Wednesday, January 10, 2001, my wife received a message on our answering machine from Gulf Coast General Manager Nancy Castellano asking me to return her call. My wife relayed the message to me, but since it was after 5p.m., I knew that the main office would be closed, and I did not return the call until the next morning. When I called the office on Thursday, January 11, 2001 at approximately 9:00 a.m., I was informed that Ms. Castellano would like to meet with me, and that I should make an appointment to speak with her. Because Ms. Castellano was not available when I called, I left a message for her with my home telephone number and my cellular number. Ms. Castellano returned my call on Thursday evening, and she scheduled an appointment to meet with me on Friday, January 12, 2001 at approximately 11:00 a.m.

4. When I reported to Ms. Castellano's office as directed at 11:00 a.m. on Friday, January 12, 2001, Ms. Castellano asked me if I minded if she set up a conference call with Gulf Coast President John Camillo in Ft. Lauderdale. I told her that would be okay. It is my understanding that Mr. Camillo is an attorney.

## DECLARATION OF JOHN DOE (ANNONYMOUS)

I, JOHN DOE, declare:

1.  My name is **[Annonymous]** and I reside in Hillsborough County, Florida.  I make this declaration based upon personal knowledge and if sworn as a witness, could testify competently to the facts contained herein.

2.  I have been employed on a continuous basis by Gulf Coast Transportation, Inc. ("Gulf Coast") a/k/a Cooperative Leasing, Inc., to drive a taxicab for United Cab in Hillsborough County, Florida for approximately ten years.

3.  I would like to participate in the lawsuit against Gulf Coast Transportation and Nancy Castellano for failing to pay Gulf Coast taxicab drivers minimum wage as required by law, but I am afraid of retaliation if I participate in this case.

4.  I was told by George Creole, a dispatcher for Gulf Coast who works very closely with General Manager Nancy Castellano and regularly informs taxicab drivers of Gulf Coast's and Ms. Castellano's instructions, on two different occasions not to participate in this lawsuit or I "would be the next Frank Dunn." Mr. Dunn had been recently terminated from Gulf Coast.  It was very clear that Mr. Creole was telling me I would be fired if I participated in this lawsuit.

5.  George Creole and other Gulf Coast employees told me that I did not want to get involved in this lawsuit because I did not want the IRS to get involved.  Other Gulf Coast drivers close to General Manager Nancy Castellano warned me that if the IRS gets involved, I might be deported because I am not a citizen of the United States.

6.  There are many other taxicab drivers who are interested in participating in this lawsuit, but are not citizens of the United States, and they are therefore afraid to

participate in this lawsuit because they have also been threatened and intimidated in this manner.

7.  After this lawsuit was filed in federal court, I was informed by several Gulf Coast taxicab drivers that Nancy Castellano called them and fired them because they chose to participate in this lawsuit.

8.  I believe there are other current or former Gulf Coast drivers who were not paid minimum wages, and would be interested in joining this lawsuit for unpaid minimum wage claims, but are afraid to participate because of threats of retaliation and because they have observed their co-workers who participated get fired.

I declare under penalty of perjury under the laws of the United States that the foregoing __ page declaration is true and correct.

Executed this ___ day of _____ 2001 in Tampa, FL.

_____John  Doe_____
[name]

Exhibit

D

# Gulf Coast Transportation

**d/b/a United Cab**
Executive Office
1600 West Commercial Boulevard
Fort Lauderdale, Florida 33309
Telephone No. (954) 493-6565, Ext. 166
Facsimile No. (954) 771-2692

January 12, 2001
Facsimile No. 727-821-5319

David J. Sockol, Esq.
Plaza Tower, Suite 1406
111 Second Avenue, Northeast
St. Petersburg, Florida 33701

     **Re:**    *Bailey vs. Gulf Coast Transportation, Inc.*

Dear Mr. Sockol:

     I am writing in response to your correspondence of yesterday. I am familiar with my ethical responsibilities as a lawyer, and want to advise you that I am not engaged in the active practice of law, and essentially ceased such practice in 1998. In that regard, I am an officer of Gulf Coast, who happens to have a law degree and be a member of the Bar, but I am not acting as a lawyer in any capacity as it pertains to the above referenced litigation. My actions, and authority arise from my position as Vice-Chairman of the company, with direct responsibility for its operations. Hopefully, this letter clarifies your questions.

     So long as your clients want to operate in our system, they must do so as independent contractors. In addition, I will continue to discuss their relationship with the company as it pertains to both the past, and the future.

     Finally, as you are aware, there is a qualified privilege as it pertains to filing an ethics complaint. I suggest that your position is completely without merit, since I am not representing Gulf Coast as a lawyer, and have no intention of doing so. If you determine that you want to pursue this action with the Bar, please do so at your own risk.

     In fact, our counsel is Mr. Tom Garwood at Ford & Harrison, P.A., 815 North Garland, Orlando, Florida 32801. His telephone no. 407-418-2315. Please don't contact me again regarding this litigation.

     If you have any questions, please call me.

                   Sincerely,

                   John M. Camillo

cc:    Nancy Castellano
       Philip E. Morgaman
       Tom Garwood, Esq.